In re Lawrence D. COAN, Margaret Coan, Debtors.

Maureen HOWARD, Plaintiff,

v.

Lawrence D. COAN and Margaret Coan, Defendants.

Bankruptcy No. 87–6361–8P7.
Adv. No. 88–55.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 5, 1989.

David L. Schrader, St. Petersburg, Fla., for plaintiff.

D. Turner Matthews, Bradenton, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a claim of nondischargeability asserted by Maureen Howard (Plaintiff) against Lawrence D. Coan and Margaret Coan (Debtors). The Complaint seeks a determination by this Court that a debt, represented by a final judgment entered in favor of the Plaintiff and against the Debtors/Defendants in state court prior to the commencement of this case, shall be declared to be nondischargeable. The Complaint is based on § 523(a)(6) and alleges that the Debtors willfully and maliciously injured the Plaintiff's person or property. The facts as established at the final evidentiary hearing which are relevant and germane to the claim asserted by the Plaintiff are as follows:

The Plaintiff is the sister of Lawrence D. Coan, one of the Debtors. At the time relevant to this controversy, they both lived in New Windsor, New York and owned adjoining parcels of property. The Plaintiff moved into her property in 1966 and lived there, in the beginning in apparent harmony with her brother and his wife, until 1974. The Plaintiff's home is located in back of the home of the Debtors so her only access to the main road was through a perpetual right of way which first is passing along side the backyard of the Debtors' house and then turning at a right angle running alongside the Debtors' property leading to the main road. Both parcels were originally owned by their parents and when the parents passed away, the properties were divided and a ten (10) foot right of way was established between the two parcels.

Sometime during 1974, the Debtors placed some cement cinder blocks at the point when the right of way turns to the main road to keep the Plaintiff from driving across part of the Debtors' property (Plaintiff's Exh. No. 5). The Debtors contend that the Plaintiff was damaging their septic tank drain field and had repeatedly asked the Plaintiff not to drive across that portion of their property. The Plaintiff contends that she needed to drive across a corner of the Debtors' property in order to have access to her carport, and that she did not, in fact, drive across the area where the septic tank was located.

Following the placement of the cinder blocks, the Debtors had the property surveyed and erected a fence along what they believed to be their property line (Plaintiff's Exh. No. 3). The Plaintiff claims that the fence was erected well into her property and seriously limited her access to her carport. Finally, the Debtors put posts along the ten-foot right of way which was co-owned not only by the Plaintiff and the Debtors, but with other beneficiaries of the estate as well (Plaintiff's Exhibit No. 9). The Debtors claim that they alone cared for the ten-foot right of way by planting flowers and plants, and were entitled to keep the Plaintiff from utilizing the easement. Eventually, the Plaintiff reverted to self-help and removed the fence. Subsequently, the Debtors filed a complaint against the Plaintiff for criminal mischief for removing the fence and had her arrested (Plaintiff's Exh. No. 6). However, the Debtors voluntarily withdrew the complaint prior to trial (Plaintiff's Exh. No. 7). Basically, a family feud ensued whereupon the Debtors called the police somewhere between six and twenty-five times to lodge complaints against the Plaintiff, and the Plaintiff retaliated by calling the police on the Debtors. As a result of this ongoing feud, the Plaintiff sued the Debtors and sought money damages based on harassment, mental distress resulting from trespass and false arrest. The suit culminated in the entry of a final judgment in the Supreme Court for the State of New York, Orange County on July 8, 1985 in the amount of $26,000 (Plaintiff's Exh. No. 1).

Damages were awarded as follows: (1) $1,000 for trespass to Plaintiff's property; (2) $15,000 for mental distress resulting from trespass; and, (3) $10,000 for false arrest. To date, the debt has been reduced by $10,000.

Based on the following, it is the contention of the Plaintiff that the state court judgment is conclusive and bars relitigation of the claim represented by the New York judgment. In the alternative it is the contention of the Plaintiff that the acts of the Debtors were willful and malicious, resulting in injury, thus nondischargeable based on § 523(a)(6) of the Bankruptcy Code. In opposition, the Debtors cite *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) and argue that this Court should look behind the state court judgment to determine the true character of the liability and make an independent determination of the dischargeability, vel non, of the debt represented by the state court judgment.

■ There is no doubt that the determination of dischargeability represented by the judgment is exclusively within the competence of the Bankruptcy Court and neither the doctrine of res judicata nor the doctrine of collateral estoppel prevents generally this bankruptcy court from determining the dischargeability of the debt. *Brown v. Felson, supra.* Although the state court judgment is recognized and accepted as a determination of the liability of the Debtors/Defendants, it does not operate as a binding and conclusive determination of the dischargeability, vel non, of the liability represented by the judgment.

■ The doctrine of collateral estoppel requires (1) that the precise issues in the latter proceeding have been raised in the prior proceeding; (2) that the issues actually were litigated in the prior proceeding; and, (3) that the determination of those issues were necessary to the decision of that court. In addition, the state court proceeding must determine the issues using standards identical to those applicable to dischargeability proceedings which is clear and convincing evidence rather than the mere preponderance which is generally standard in civil litigations. *Spilman*, 656

F.2d 224 (6th Cir.1981). If any of these requirements are not satisfied, then collateral estoppel does not bar litigation of the issues bearing on the question of dischargeability in the bankruptcy court.

It is well established that before the doctrine of collateral estoppel is applied, the Bankruptcy court must look at the entire record of the prior proceeding. A mere ultimate finding, if there is one, in the judgment is insufficient. *Spilman*, 656 F.2d 224 (6th Cir.1981).

It appears from the judgment that the money damages awarded to the Plaintiff were based on the finding of trespass, infliction of mental distress resulting from trespass and false arrest. However, this Court does not have the benefit of the trial transcript or, more importantly, the benefit of the jury instructions given by the court especially as it relates to the burden of proof. Moreover, it is clear that the suit of the Plaintiff was not litigated for the purpose of determining the dischargeability, vel non, of the Debtors' liability and the issue of willful and malicious conduct by the Debtors was not actually litigated. Based on the foregoing, it is clear that the doctrine of collateral estoppel is no bar which could prevent this court to determine the issue of dischargeability, vel non, of the liability of the debt represented by the final judgment entered in the New York litigation. Thus, it remains for this Court to determine whether or not the facts in this case warrant the finding that the debt represented by the judgment is excepted from the general protection of the bankruptcy discharge by virtue of § 523(a)(6) of the Bankruptcy Code. This exception to the discharge provides as follows:

§ 523. **Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ....

■ In order for a liability to be excepted from discharge under 11 U.S.C.

§ 523(a)(6), the wrongful act must be both willful and malicious. The term "willful" means "deliberate" or "intentional". H.R. Report No. 95–595, 95th Cong. 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319. *See also, In re Giantvalley,* 14 B.R. 457, 458 (D.Nev.1981). The act is malicious if the injury arises from a willful act done wrongfully and without just cause or excuse. *See, McElhanon v. Greer (In re Greer),* 21 B.R. 763 (D.Ariz.1982). While it is true that hatred, spite or ill will is not required to support a finding of nondischargeability under § 523(a)(6), *In the Matter of Chambers,* 23 B.R. 206 (M.D.Wisc.1982), it is equally true that the standard established in the case of *Tinker v. Colwell,* 193 U.S. 473 (1902) [24 S.Ct. 505, 48 L.Ed. 754, 11 Am.Bankr.Rep. 568] is no longer applicable thus reckless disregard of rights of others by itself would not be sufficient to sustain a claim of nondischargeability under § 523(a)(6).

It is a generally accepted proposition that exceptions to the discharge set forth in § 523 of the Bankruptcy Code must be strictly construed because the long established philosophy of all bankruptcy legislation is that the discharge provisions should be construed in favor of the debtor in order to achieve the congressional intent, which was to give financially distressed debtors a fresh start in life. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). Thus, it is clear that the burden is on the creditor to prove any exception to the discharge. *In re Danns v. Household Finance Corp.,* 558 F.2d 114, 116 (2d Cir. 1977); *In re Hunter,* 780 F.2d 1577 (11th Cir.1986). It is equally clear that the standard of proof imposed on the creditor is that of a clear and convincing evidence. *In re Neumann,* 13 B.R. 128, 130 (Bankr.E.D. Wis.1981); *see also In re Magnusson,* 14 B.R. 662, 667 (Bankr.N.D.N.Y.1981); *In re Guilmette,* 12 B.R. 799, 802 (Bankr.D.R.I. 1981); *In re Trewyn,* 12 B.R. 543, 545–46 (Bankr.W.D.Wis.1981).

In light of the foregoing, the conclusion is inescapable that the matter under consideration is nothing more than a family feud between two siblings. While it is true that it takes no great imagination to conclude that there is no love lost between them, there is nothing in this record which would warrant the conclusion which would rise to the level of conduct condemned by § 523(a)(6). While there is conflict in the testimony as to whether or not a fence was placed on the Plaintiff's property or on the Debtors' property, it is clear that this was simply nothing more than a legitimate property right dispute. This Court finds that the placing of the fence, poles and cinder blocks on or along the property of the Plaintiff might have been warranted if one accepts the Debtors' version. Although the Plaintiff was, in fact, arrested for tearing down the fence, there is no evidence that the Debtors were not, in fact, justified in calling the police. It should be noted that the complaint filed for her arrest was voluntarily dismissed by the Debtors and that both parties admitted to calling the police on several different occasions against each other.

This Court is satisfied that under the facts of this case, the Plaintiff has failed to sustain her burden of proof and establish with clear and convincing evidence indispensable operating elements of a claim of nondischargeability under § 523(a)(6) of the Bankruptcy Code.

Based on the foregoing, this Court is satisfied that the debt allegedly due and owing by the Debtors to the Plaintiff shall be declared to be dischargeable and that the Complaint of the Plaintiff shall be dismissed with prejudice.

A separate Final Judgment will be entered in accordance with the foregoing.